UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>LARRY CATES,<br><br>    Defendant. | 2:05-cr-00014-PMP-GWF<br><br>**FINDINGS & RECOMMENDATIONS** |

    This matter is before the Court on Defendant Larry Cates' Motion to Suppress Evidence for Fourth Amendment Violation (#28), filed on January 4, 2006 and the Government's Response and Opposition to Defendant's Motion to Suppress Evidence (#31), filed on January 17, 2006. The Court conducted an evidentiary hearing in this matter on January 24, 2006.

    In this case, Defendant Cates was placed under arrest by a police officer who observed him urinating in a public alley in downtown Las Vegas. During a search of Defendant's person, the officer discovered a loaded handgun in his inside jacket pocket. Defendant was a convicted felon and he was subsequently indicted for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924 (a)(2). Defendant contends that the search of his person which revealed the handgun violated the Fourth Amendment. He therefore moves to suppress the evidence of the firearm and the statements allegedly made by him subsequent to the arrest as the fruits of the poisonous tree.

## STATEMENT OF FACTS

    On December 19, 2004, at approximately 3:30 p.m., Las Vegas Metropolitan Police Officers Samuel Underwood and Russell Smith were on bicycle patrol in the "Downtown" area of Las Vegas,

1  Nevada. The officers were riding their bicycles southbound in an alley than runs between Main Street
2  and First Street.  As the officers approached the alley on the south side of its intersection at
3  Bonneville Avenue (an east-west street), they observed Defendant Cates in the alley on the south side
4  of Bonneville Avenue.  Defendant was standing in a three-sided brick enclosure that contains a
5  garbage dumpster. The height of the enclosure was approximately the same as the dumpster.  The
6  rear side of this dumpster enclosure is on the eastside of the alley adjacent to an apartment building.
7  The open-side of the dumpster enclosure faces west into the alley. Officer Underwood testified that
8  ingress-egress to the apartment building on the east side of the alley is through the alley.  Apartment
9  windows on the second floor of this building face the alley. Officer Underwood also testified that
10 there is an apartment building located on the west side of the alley and apartment windows in that
11 building also face the alley.  There is also an adult book store located on the southwest corner of the
12 alley and Bonneville. Cars park in the rear of the adult book store adjacent to the alley.  The
13 dumpster enclosure is approximately one hundred (100) feet south of Bonneville.
14       Officer Underwood testified that as he and Officer Smith approached the dumpster enclosure,
15 he observed the Defendant standing approximately two feet inside the dumpster enclosure, between
16 the dumpster and the south-side of the enclosure.  Defendant's back was to the alley.  Officer
17 Underwood testified that he observed Defendant urinating in the dumpster enclosure – the officer saw
18 urine falling from Defendant's body and heard the sound of the urine as it fell.  He did not, however,
19 observe Defendant's genitals. Officer Underwood testified that he asked Defendant to step out of the
20 dumpster enclosure into the alley.  According to Officer Underwood, Defendant asked that he be
21 permitted to finish urinating.  Defendant then stepped into the alley and faced the officer. According
22 to Officer Underwood, he immediately placed Defendant under arrest by placing him in handcuffs.
23 Officer Underwood testified that it was his intention at that moment to arrest the Defendant for
24 violation of a Las Vegas City ordinance which prohibits "immodest and indecent behavior" –  in this
25 case urinating in a public alley.
26       According to Officer Underwood, Defendant's conduct in urinating in the alley would have
27 been visible to persons looking out from the apartment windows overlooking the alley, or by passers-
28 by in or near the alley.  Neither officer testified, however, that they were aware that any persons,

other than themselves, actually observed Defendant urinating. Both officers testified that while working bicycle patrol in the downtown area, they frequently encounter persons urinating in public. Officer Underwood testified that in ninety (90) percent of such cases, the persons are placed under arrest, although they could also be issued a citation. Officer Smith also confirmed that persons urinating in public are encountered with some frequency in the downtown area, and the officers generally arrest these persons. Officer Underwood also testified that are there several restrooms, open for use by the public, located in the downtown area which could have been used by Defendant.

According to Officer Underwood, upon placing the Defendant under arrest, he conducted a search of Defendant's bodily incident to the arrest. During the search of Defendant's body, Officer Underwood discovered a loaded .22 short caliber revolver in an inside pocket of Defendant's jacket. Officer Underwood testified that Officer Smith verbally informed Defendant Cates of his Miranda rights and the Defendant acknowledged that he understood his rights. According to the testimony of Officer Underwood and Officer Smith, the Defendant stated that he carried the firearm for personal protection. He also stated that he had a permit to carry a concealed weapon, but that he did not have the paperwork on his person. Defendant also reportedly told the officers that his only prior arrest was for DUI and that he had done time in the county jail in California.

According to the officers, Defendant later changed his story when he arrived at the Clark County Detention Center and stated that the firearm did not belong to him – that he had found the jacket and did not know there was a firearm in the inside pocket. A criminal records check of Defendant showed that he had prior convictions for robbery in Nevada in 2000, as well as prior California felony convictions. The Defendant was booked into the Clark County Detention Center on charges of immodest and indecent behavior, carrying a concealed weapon, possession of an unregistered firearm, possession of a firearm by an ex-felon, and obstructing a police officer by providing false information. Defendant was subsequently indicted in the United States District Court, District of Nevada on January 12, 2005 for the crime of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and 924 (a)(2).

During the evidentiary hearing, Defendant and the Government stipulated to the admission of the arrest report and attached documents as Exhibit "D". Included in Exhibit "D", is a "Property

Report" form that was filled out in handwriting by Officer Underwood at 4:20 p.m. on day of the arrest. In the box labeled "Circumstances," Officer Underwood wrote:

> Conducted a person stop on above suspect for urinating in the alley on a dumpster. Suspect gave consent to search. Found below listed item inside his jacket pocket.

The item listed on the form is the .22 caliber revolver and the 6 bullets loaded therein.

Under cross-examination by Defendant's counsel, Officer Underwood acknowledged that he was aware through his training as a police officer of the different legal standards for conducting an investigatory stop or "Terry stop" versus making an arrest based on probable cause and conducting a search of a suspect incident to arrest. Officer Underwood testified that in conducting a search incident to arrest, it is not necessary to request or obtain the suspect's consent to search, because the officer has the legal right to search the arrestee for weapons or other contraband. Officer Underwood also testified to his understanding that when making an investigatory stop, based on reasonable suspicion that the person may be engaged in criminal activity and armed, the permissible scope of any search of the person for a weapon is more limited and the person's consent may be needed to justify a search of his body. Although acknowledging that his Property Report indicates that he conducted a "person stop" and obtained Defendant's consent to search, Officer Underwood testified that the statements contained in the Property Report were in error. Officer Underwood testified that he, in fact, immediately placed Defendant under arrest in the alley and that he searched him incident to that arrest. He did not ask Defendant for consent to search him and did not obtain Defendant's consent to a search.

Officer Smith also testified at the hearing. His recollection of the details of the incident were vague. He testified, however, that as he and Officer Underwood were traveling in the alley, Officer Underwood pointed out to him the Defendant who was urinating in the dumpster enclosure. Both officers approached the Defendant and Officer Underwood placed Defendant in handcuffs and proceeded to conduct a search of his person. After the search revealed the handgun in Defendant's coat pocket, Officer Smith informed Defendant of his Miranda Rights, which Defendant stated he understood. Officer Smith, who prepared the written arrest report, confirmed the testimony of Officer Underwood that the search of Defendant's person was made incident to the arrest for

immodest and indecent behavior.

## DISCUSSION

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." *Id.* Evidence obtained in violation of the Fourth Amendment, and evidence derived from it, may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

Defendant's Motion to Suppress (#28) views the circumstances of the search and seizure in this case as falling under the constitutional standard applicable to investigatory stops of individuals in which the court must determine whether the officer had reasonable suspicion that the person was engaged in, or about to engage in, dangerous criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). Where an officer has reasonable suspicion that a person may be engaged in dangerous criminal activity and may be armed, the officer may briefly detain the person and conduct a "pat-down" search of his body for the presence of a weapon. Defendant argues that the police officers in this case lacked reasonable suspicion to believe that Defendant was engaged in, or about to engage in, dangerous criminal activity and therefore the search violated the Fourth Amendment.

The Government argues, however, that the officers detained and arrested the Defendant based on probable cause to believe he had committed a crime, urinating in a public alley in violation of a Las Vegas city ordinance. The Government, therefore argues, that the search of Defendant's person, was a search incident to arrest and is not governed by the *Terry* principles applicable to investigatory stops.

Police officers may execute warrantless searches incident to a lawful arrest and search an arrestee and the area within his immediate control for weapons that might threaten the officer's safety, or evidence of a crime that might be hidden or destroyed. *Chimel v. California,* 395 U.S. 752, 762-63, 89 S.Ct. 2034 (1969); *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 2132 (2004); *United States v. Kincade*, 379 F.3d 813, 822 (2004); *United States v. Osife*, 398 F.3d 1143, 1145 (9th Cir. 2005).

As the Ninth Circuit recently noted in *United States v. Osife, supra:*

> "In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court made clear that courts are *not* to decide on a case-by-case basis whether the officers' safety is in jeopardy or whether evidence is in danger of destruction. *Id.,* at 234, 94 S.Ct. 467. Rather, the Court explained, *Chimel* laid down a bright-line rule: a search of the arrestee's person and the area within his reach is *per se* reasonable and permissible under the Fourth Amendment. *Id.*

398 F.3d at 1145.

In *Osife*, the defendant parked his pickup truck in the parking lot of a grocery store. He urinated on ground next to his truck and then walked into the store. A woman standing in the parking lot observed defendant's conduct and called the police. The officers came to the scene and observed the pool of fluid next to the driver's door of defendant's truck. Defendant came out of the store and went to his truck. As the defendant opened the truck door, one of the officers saw him take a plastic bag from his pocket and place it in the truck. The officer approached defendant and told him about the report of his public urination, which defendant denied. A few minutes later, the woman who had called the police, returned to the area and told the officers that defendant was the person she had seen urinating by the truck. The officer thereupon placed defendant under arrest for indecent exposure, handcuffed him and placed him in the police car. The police then conducted a search of the cab of the pick-up truck and found a .40 caliber pistol underneath a plastic bag on the seat. Defendant, a previously convicted felon, was thereafter charged and convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The defendant in *Osife* did not challenge the validity of his arrest for indecent exposure, but argued that the police exceeded the permissible scope of their right to search his vehicle because there was no reasonable suspicion that he was armed given the nature of the offence for which he was arrested and because he was not in the vicinity of the vehicle at the time of the search. The court rejected these arguments based on *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860 (1981) and *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 2132 (2004).

In this case, both Officer Underwood and Officer Smith testified that they observed Defendant Cates urinating next the dumpster in the alley. Neither officer had any suspicion that Defendant was engaged in, or about to engage in, other criminal activity or that Defendant was armed. Both officers

1  testified that the decision was immediately made to arrest Defendant Cates pursuant to an applicable
2  city ordinance based on his conduct in urinating in the alley. Defendant's counsel attempted to cast
3  doubt on the reason or grounds for the officer's search of Defendant based on Officer Underwood's
4  statement in the "Property Report" that he conducted a "person stop" on Defendant for urinating in
5  the alley and that Defendant gave consent to the search. Officer Underwood testified, however, that
6  the statement in his "Property Report" that Defendant gave his consent to search was in error, and
7  that he never requested, nor did Defendant grant, permission to search his person. Officer
8  Underwood reiterated that the search of Defendant was conducted incident to his arrest.

9  The handwritten and dictated Arrest Reports prepared by Officer Smith state that Defendant
10 was placed under arrest for "Immodest and Indecent Behavior" and the search was made incident to
11 that arrest. Exhibit "D". Nothing in the Arrest Reports or in the officers' testimony suggests that the
12 officers were suspicious that Defendant was engaged in other criminal activity or that his consent to
13 search his person was either requested or obtained. No evidence was introduced at the hearing to
14 contradict the officers' testimony that Defendant was, in fact, urinating in the alley.

15 To the extent that Defendant argues or implies that the arrest was a pretext for conducting a
16 body search based the officer's inchoate suspicion that Defendant might be armed or have contraband
17 in his possession, the Court must reject such an assertion. So long as the officers had probable cause
18 to believe that Defendant had committed a violation of law for which he was subject to arrest, the
19 officers' search of his person did not violate the Fourth Amendment. *Whren v. United States*, 517
20 U.S. 806, 116 S.Ct. 1769 (1996).

21 Whether a state law enforcement officer has authority to make an arrest is ordinarily
22 determined by state law. *Ker v. California*, 374 U.S. 23, 37, 83 S.Ct. 1623 (1963); *United States v.*
23 *Shepard*, 21 F.3d 933, 936 (9th Cir. 1994). Nevada Revised Statute (NRS) 171.124.1(a) states that a
24 peace officer may, without a warrant, arrest a person for a public offense committed or attempted in
25 his presence. The evidence presented at the hearing establishes that the officers observed Defendant
26 urinating in the alley. Las Vegas City Ordinance § 10.40.040 states:

27 > Immodest, improper, or indecent behavior upon any public street, alley or highway of the City or in any place within the City to which the public is invited is prohibited.
28 > Any person who violates this Section is guilty of a misdemeanor. (Amended at City's

request, letter of 4-11-83; Ord. 6 § 2, 1911; prior code § 6-1-18).

Defendant has not contested that his conduct in urinating in the alley violated the foregoing city ordinance. Other state courts have held that urinating in a public place is conduct sufficient to constitute a violation of similar statutes or ordinances. *People v. Cooke*, 578 N.Y.S.2d 76, 77-78 (J.Ct. N.Y. 1991) (urinating in a public place may constitute disorderly conduct under a local town ordinance); *State v. Villarreal*, 984 P.2d 1064, 1067 (Wash.App. 1999) (urinating in public place may be found to violate ordinances prohibiting vulgar, profane or obscene conduct or disposal of offensive or nauseous substances); *State v. Cherry*, 173 N.W.2d 887 (Neb. 1970) (urinating in public could constitute 'indecent behavior" under a municipality's disorderly conduct ordinance.)

In this case, the officers testified that the alley between Main Street and First Street is a public alley and, therefore, within the scope of Las Vegas City Ordinance § 10.40.040. Defendant's location in the alley where he was urinating was visible from the apartment windows on both sides of the alley and to persons passing through the alley or traveling on the adjacent public street, Bonneville Ave. The officers testified that they observed Defendant urinating as they approached him. The officers also indicated that there were restrooms open to the public in the general vicinity of where Defendant was located which he could have used instead of urinating in the alley. Under these circumstances, the officers had probable cause to arrest Defendant for violation of the ordinance.

## CONCLUSION

Based on the foregoing, the Court finds that the police officers had probable cause to arrest Defendant Cates for violation of Las Vegas City Ordinance § 10.40.040. Incident to that arrest, the officers were legally entitled to search Defendant's person for weapons or contraband. The search of the Defendant's person and the discovery of the handgun in his inside coat pocket, therefore, did not violate the Fourth Amendment. Therefore, for good cause shown,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence for Fourth Amendment Violation (#28) should be **DENIED.**

DATED this 26th day of January, 2006.

_____
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE